1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    PAULETTE SHEREE CORTEZ              Case No.  1:23-cv-00791-HBK
      ROBERTS,
12                                        ORDER DENYING PLAINTIFF'S MOTION
                     Plaintiff,           FOR SUMMARY JUDGMENT, GRANTING
13                                        DEFENDANT'S MOTION FOR SUMMARY
              v.                          JUDGMENT, AND AFFIRMING THE
14                                        DECISION OF THE COMMISSIONER OF
      MARTIN O'MALLEY,                    SOCIAL SECURITY[2]
15    COMMISSIONER OF SOCIAL
      SECURITY,[1]                        (Doc. Nos. 16, 20)
16
                     Defendant.
17

18

19

20           Paulette Sheree Cortez Roberts ("Plaintiff") seeks judicial review of a final decision of the

21    Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for

22    supplemental security income under the Social Security Act.  (Doc. No. 1).  The matter is

23    currently before the undersigned on the parties' briefs, which were submitted without oral

24    argument.  (Doc. Nos. 16, 20).  For the reasons stated, the Court denies Plaintiff's motion for

25

26    _____
      [1] This action was originally filed against Kilolo Kijakazi in his capacity as the Commissioner of Social
27    Security.  (*See* Doc. No. 1). The Court has substituted Martin O'Malley, who has since been appointed the
      Acting Commissioner of Social Security, as the defendant in this suit.  *See* Fed. R. Civ. P. 25(d).
      [2]  Both parties have consented to the jurisdiction of a magistrate judge, in accordance with 28 U.S.C.
28    §636(c)(1).  (Doc. No. 6).

1   summary judgment, grants Defendant's motion for summary judgment, and affirms the

2   Commissioner's decision.

### I.   JURISDICTION

4        Plaintiff protectively filed for supplemental security income on December 30, 2020,

5   alleging a disability onset date of July 13, 2020.  (AR 346-52).  Benefits were denied initially

6   (AR 143-62, 192-97) and upon reconsideration (AR 163-85, 199-205).  Plaintiff appeared for a

7   hearing before an administrative law judge ("ALJ") on October 18, 2022.  (AR 41-67).  Plaintiff

8   testified at the hearing and was represented by counsel.  (*Id.*).  The ALJ denied benefits (AR 18-

9   40) and the Appeals Council denied review (AR 5-10).  The matter is before the Court under 42

10  U.S.C. § 1383(c)(3).

### II.   BACKGROUND

12       The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's

13  decision, and the briefs of Plaintiff and Commissioner.  Only the most pertinent facts are

14  summarized here.

15       Plaintiff was 39 years old at the time of the hearing.  (*See* AR 47).  She completed

16  eleventh grade.  (AR 48).  She lives with her husband.  (AR 47).  She has no past relevant work.

17  (AR 33).  Plaintiff testified she cannot work because her back is "out of alignment," she has

18  sciatic nerve pain on the left side of her body, and she has numbness in her left arm.  (AR 51).

19  She reported "a lot" of pain in her right knee, chronic pain in her feet, pain all over her body, and

20  difficulty walking.  (AR 52).  Plaintiff testified she has been prescribed a cane and a wheelchair,

21  and she cannot walk for more than a minute without the cane or a walker because her "balance is

22  off." (AR 53-55).  She has pain in her back after sitting for 5-10 minutes, and the pain radiates

23  into her hips.  (AR 54-56).  She cannot carry a gallon of milk, she cannot bend at the waist, and

24  she cannot go up and down stairs.  (AR 56).  Plaintiff testified that her left arm goes numb and

25  "heavy," her feet go numb and hurt all the time, and her right knee is painful and swollen.  (AR

26  56).  She reported that she lays in bed most of the day because her body aches if she gets up and

27  moves around.  (AR 57).  Plaintiff receives in home support care including help showering,

28  getting dressed, doing laundry, cooking, and light cleaning.  (AR 58).  She reported dizzy spells,

1    migraines, memory problems, difficulty gripping and grasping, dropping things, and inability to

2    write or type.  (AR 59-61).  Plaintiff testified that she elevates her legs throughout the day

3    because they swell, and she is recovering from the gout.  (AR 61).

### III.    STANDARD OF REVIEW

5        A district court's review of a final decision of the Commissioner of Social Security is

6    governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the

7    Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or

8    is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial

9    evidence e" means "relevant evidence that a reasonable mind might accept as adequate to support

10   a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial

11   evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation

12   and citation omitted).  In determining whether the standard has been satisfied, a reviewing court

13   must consider the entire record as a whole rather than searching for supporting evidence in

14   isolation. *Id.*

15       In reviewing a denial of benefits, a district court may not substitute its judgment for that of

16   the Commissioner.  "The court will uphold the ALJ's conclusion when the evidence is susceptible

17   to more than one rational interpretation."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir.

18   2008).  Further, a district court will not reverse an ALJ's decision on account of an error that is

19   harmless.  *Id*.  An error is harmless where it is "inconsequential to the [ALJ's] ultimate

20   nondisability determination."  *Id*. (quotation and citation omitted).  The party appealing the ALJ's

21   decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556

22   U.S. 396, 409-10 (2009).

### IV.    SEQUENTIAL EVALUATION PROCESS

24       A claimant must satisfy two conditions to be considered "disabled" within the meaning of

25   the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful

26   activity by reason of any medically determinable physical or mental impairment which can be

27   expected to result in death or which has lasted or can be expected to last for a continuous period

28   of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment

1    must be "of such severity that he is not only unable to do his previous work[,] but cannot,

2    considering his age, education, and work experience, engage in any other kind of substantial

3    gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

4          The Commissioner has established a five-step sequential analysis to determine whether a

5    claimant satisfies the above criteria.  See 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the

6    Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the

7    claimant is engaged in "substantial gainful activity," the Commissioner must find that the

8    claimant is not disabled.  20 C.F.R. § 416.920(b).

9          If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step

10   two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20

11   C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of

12   impairments which significantly limits [his or her] physical or mental ability to do basic work

13   activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's

14   impairment does not satisfy this severity threshold, however, the Commissioner must find that the

15   claimant is not disabled.  20 C.F.R. § 416.920(c).

16         At step three, the Commissioner compares the claimant's impairment to severe

17   impairments recognized by the Commissioner to be so severe as to preclude a person from

18   engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as

19   severe or more severe than one of the enumerated impairments, the Commissioner must find the

20   claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

21         If the severity of the claimant's impairment does not meet or exceed the severity of the

22   enumerated impairments, the Commissioner must pause to assess the claimant's "residual

23   functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's

24   ability to perform physical and mental work activities on a sustained basis despite his or her

25   limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

26         At step four, the Commissioner considers whether, in view of the claimant's RFC, the

27   claimant is capable of performing work that he or she has performed in the past (past relevant

28   work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant

4

1   work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(f).  If

2   the claimant is incapable of performing such work, the analysis proceeds to step five.

3         At step five, the Commissioner considers whether, in view of the claimant's RFC, the

4   claimant is capable of performing other work in the national economy.  20 C.F.R. §

5   416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational

6   factors such as the claimant's age, education, and past work experience.  20 C.F.R. §

7   416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must

8   find that the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of

9   adjusting to other work, analysis concludes with a finding that the claimant is disabled and is

10  therefore entitled to benefits.  20 C.F.R. § 416.920(g)(1).

11        The claimant bears the burden of proof at steps one through four above.  *Tackett v. Apfel*,

12  180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the

13  Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such

14  work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran*

15  *v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

16                              **V.    ALJ'S FINDINGS**

17        At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity

18  since December 30, 2020, the application date.  (AR 24).  At step two, the ALJ found that

19  Plaintiff has the following severe impairments: cervical and lumbar degenerative disc disease and

20  morbid obesity.  (AR 24).  At step three, the ALJ found that Plaintiff does not have an impairment

21  or combination of impairments that meets or medically equals the severity of a listed impairment.

22  (AR 26).  The ALJ then found that Plaintiff has the RFC to

23              perform sedentary work as defined in 20 CFR 416.967(a) where the
                claimant can lift/carry and push/pull 10 pounds occasionally and five
24              pounds frequently and stand and walk for two hours and sit for six
                hours with standard breaks within an eight hour workday.  She
25              requires use of a cane only for walking long distances or standing
                more than 10 minutes at a time. She can occasionally stoop and kneel
26              and can never crawl, crouch, climb or balance as that term is used in
                the Selected Characteristics of Occupations.  She must never be
27              exposed to unprotected heights or dangerous, unprotected
                machinery.
28

                                      5

1    (AR 27).  At step four, the ALJ found that Plaintiff has no past relevant work.  (AR 33).  At step

2    five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there

3    are jobs that exist in significant numbers in the national economy that Plaintiff can perform,

4    including assembler, table worker, and bench hand.  (AR 34).  On that basis, the ALJ concluded

5    that Plaintiff has not been under a disability, as defined in the Social Security Act, since

6    December 30, 2020, the date the application was filed.  (AR 34).

## VI.    ISSUES

8         Plaintiff seeks judicial review of the Commissioner's final decision denying her

9    supplemental security income benefits under Title XVI of the Social Security Act.  (Doc. No. 1).

10   Plaintiff raises the following issue for this Court's review: whether the ALJ properly considered

11   Plaintiff's symptom claims regarding manipulative limitations.  (Doc. No. 16 at 13-20).

## VII.    DISCUSSION

13        An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding

14   subjective pain or symptoms.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).

15   The ALJ first must determine whether there is "objective medical evidence of an underlying

16   impairment which could reasonably be expected to produce the pain or other symptoms alleged."

17   *Id*. (internal quotation marks omitted).  "The claimant is not required to show that his impairment

18   could reasonably be expected to cause the severity of the symptom he has alleged; he need only

19   show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572

20   F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

21        Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the

22   ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ]

23   gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim v. Colvin*, 763 F.3d

24   1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).  "General findings are

25   insufficient; rather, the ALJ must identify what testimony is not credible and what evidence

26   undermines the claimant's complaints."  *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.

27   1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a

28   credibility determination with findings sufficiently specific to permit the court to conclude that

1    the ALJ did not arbitrarily discredit claimant's testimony.").  "The clear and convincing

2    [evidence] standard is the most demanding required in Social Security cases."  *Garrison v.*

3    *Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278

4    F.3d 920, 924 (9th Cir. 2002)).

5            Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably

6    be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning

7    the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with

8    the medical evidence and other evidence in the record."  (AR 28).  Plaintiff generally argues the

9    "ALJ's failure to directly address [her] testimony and symptomology evidence of manipulative

10   tingling, numbness, weakness, and limitation resulting in decreased functioning in gripping,

11   grasping, handling, writing and typing, stemming from the 'severe' impairment of cervical

12   [degenerative disc disease], or to explain, citing clear and convincing objective or subjective

13   evidence of record, why he was discounting this testimony and ultimately failing to include any

14   manipulative limitation in the RFC, is harmful error."  (Doc. No. 16 at 16-17).  Defendant argues

15   the ALJ specifically considered her subjective allegations of neck pain with paresthesia that

16   radiates down her upper extremities and difficulty using her hands, and provided legally sufficient

17   reasons for discounting Plaintiff's symptom claims regarding any manipulative limitations.  (Doc.

18   No. 20 at 11-12).  The Court agrees.

19           First, as to her claims of manipulative limitations, the ALJ found clinical examination

20   findings showed "very sparse signs of any upper extremity neurological deficits."  (AR 28).

21   Medical evidence is a relevant factor in determining the severity of a claimant's pain and its

22   disabling effects.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (an ALJ may not

23   discredit a claimant's pain testimony and deny benefits solely because the degree of pain is not

24   supported by objective medical evidence).  Plaintiff argues the ALJ "made no reference" to

25   medical evidence that would tend to support her subjective complaints, including examination

26   findings of limited cervical range of motion and tenderness of the cervical spine; decreased

27   sensation in the bilateral forearm and 4/5 right shoulder abduction, right wrist flexion/extension,

28   and right elbow flexion/extension in June 2021; and positive cervical compression test and

7

1   Spurling's test results in August 2021 for which she was prescribed a right cervical

2   radiofrequency ablation and cervical medial branch block injection.[3]  (Doc. No. 16 at 18-19

3   (citing AR 637, 709-10, 735-37, 743-46)).  However, the Court's review of the ALJ's decision

4   indicates he did consider examination findings and objective evidence in support of this finding,

5   including several of the records cited by Plaintiff in support of her argument.  Specifically, as to

6   Plaintiff's cervical spine impairment, the ALJ cited x-rays of Plaintiff's cervical spine showing

7   straightening of the cervical lordosis and only mild disc space narrowing at C5-6; consistent

8   findings of no neck instability or upper extremity weakness; reduced cervical spinal range of

9   motion and mild deficits in upper extremity motor strength; intact sensation in upper extremities

10  except for decreased sensation in her bilateral forearms; no neurological deficits in upper

11  extremities; normal range of motion of cervical spine; and normal motor strength and intact

12  sensation in her upper extremities.  (AR 29-30, 573, 587-88, 664, 674, 710, 741 (reporting 90%

13  pain relief in her neck after medial branch block), 734-35, 822, 846-47 (normal range of motion

14  of cervical back and no complaints of weakness or numbness)).  Thus, when viewing the record

15  as a whole, the ALJ explicitly recognized evidence in the record that could be considered more

16  favorable to Plaintiff and nonetheless found the severity of her symptom claims regarding any

17  upper extremity or manipulative limitations were inconsistent with the weight of the medical

18  evidence.  (*See* AR 29-30).  "[W]here evidence is susceptible to more than one rational

19  interpretation, it is the [Commissioner's] conclusion that must be upheld."  *Burch v. Barnhart*,

20  400 F.3d 676, 679 (9th Cir. 2005).  This was a clear and convincing reason, supported by

21  substantial evidence, for the ALJ to discount any claims of manipulative limitations.

22      ////

23

24  [3] Plaintiff also notes the ALJ found cervical degenerative disc disease to be a severe impairment at step two and proceeds to list several diagnoses in the record related to a cervical spine impairment in the record

25  that "can cause" or "may include" certain symptoms, without citing corresponding evidence of those clinical findings in the record before the ALJ.  (Doc. No. 16 at 14-15).  As correctly noted by Defendant,

26  this "lengthy list of potential symptoms, gleaned from various medical citations, that could possibly have resulted from [Plaintiff's] diagnosed conditions are inapposite. . .. The ALJ reviewed the longitudinal

27  record, noted that it documented very limited positive clinical signs related to her upper extremities – as opposed to those that might have resulted from her condition – and reasonably concluded that the evidence

28  did not support any manipulative limitations."  (Doc. No. 20 at 15).

1       Second, the ALJ found Plaintiff "received overall conservative treatment for her spinal

2  disorders, involved primarily pain management and physical therapy treatment with no evidence

3  of any orthopedic treatment within the relevant record."  (AR 28).  Evidence of "conservative

4  treatment" may be sufficient to discount a claimant's testimony regarding the severity of an

5  impairment.  *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007); *Johnson v. Shalala*, 60 F.3d

6  1428, 1434 (9th Cir. 1995) (ALJ may properly rely on the fact that only conservative treatment

7  has been prescribed).  Plaintiff argues that the ALJ failed to identify specific "non-conservative,

8  aggressive" options for treating her "cervical disfunction issues that would restore her ability to

9  function normally in a workplace."  (Doc. No. 16 at 18).  However, even assuming, arguendo,

10  that the ALJ failed to explain how Plaintiff's treatment for cervical degenerative disc disease was

11  conservative in nature, any error is harmless because the ALJ offers additional reasoning as to

12  Plaintiff's treatment history, supported by substantial evidence, to discount Plaintiff's symptoms

13  claims as to any manipulative limitations.  *See Carmickle v. Comm'r of Soc. Sec.,* 533 F.3d 1155,

14  1162-63 (9th Cir. 2008) (error in considering one of several reasons given in support of ALJ's

15  finding was harmless because the remaining reasons and ultimate determination were supported

16  by substantial evidence).  Specifically, the ALJ noted that the "conservative treatment" has been

17  effective at controlling Plaintiff's pain symptoms.  (AR 29-20, 32, 729, 741).  This favorable

18  response to treatment for pain across the longitudinal record was a clear, convincing, and

19  unchallenged reason for the ALJ to discount Plaintiff's symptom claims.  *See Tommasetti*, 533

20  F.3d at 1040; *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006)

21  (conditions effectively controlled with medication are not disabling for purposes of determining

22  eligibility for benefits).

23       Moreover, the ALJ notes that "[c]onsistent with that effective pain control with

24  medication, [Plaintiff] has attended few physical therapy sessions and has declined consideration

25  of surgical alternatives."  (AR 32-33).  Unexplained, or inadequately explained, failure to seek

26  treatment or follow a prescribed course of treatment may be the basis for rejection of Plaintiff's

27  symptom claims unless there is a showing of a good reason for the failure.  *Orn v. Astrue*, 495

28  F.3d 625, 638 (9th Cir. 2007).  However, an ALJ "will not find an individual's symptoms

1    inconsistent with the evidence in the record on this basis without considering possible reasons he

2    or she may not comply with treatment or seek treatment consistent with the degree of his or her

3    complaints."  Social Security Ruling ("SSR") 16-3p at *8-*9 (March 16, 2016), *available at* 2016

4    WL 1119029.  In support of this finding, the ALJ cited evidence that Plaintiff was discharged

5    from physical therapy after three visits due to multiple no shows and cancellations, and repeatedly

6    declined a neurology consultation because she was "not interested in surgical intervention."  (AR

7    29-30, 715, 778, 787).  Plaintiff argues the ALJ "fails to address [Plaintiff's] testimony that her

8    treatment has been sporadic because of issues with medical insurance (Medi-Cal) not covering

9    varying pain management procedures, surgeries or treatment with varying providers as the reason

10   she has not engaged further in 'surgical alternatives,' as opposed to the ALJ's statement that she

11   'declined consideration of surgical options.'"  (Doc. No. 16 at 17-18 (citing AR 51-52).  This

12   argument is inapposite for several reasons.  The portion of the testimony cited by Plaintiff does

13   not address her discharge from physical therapy as related to insurance coverage; rather, Plaintiff

14   testifies that she did not go to physical therapy because of a cyst in her right ovary.  (AR 51-52).

15   Moreover, while Plaintiff does testify that her physician told her "it's hard to have these surgeries

16   and stuff done too" because Medi-Cal is slow to approve "stuff" like her prescribed walker and

17   cane (AR 52), the medical records cited by the ALJ specifically note that a neurology consult was

18   recommended but Plaintiff "declines surgery," without reference to insurance coverage.  (AR 30,

19   778, 787).  Personal preference is not a sufficient reason to not comply with treatment

20   recommendations.  *See, e.g.*, *Molina*, 674 F.3d at 1113-14 (affirming an ALJ's discounting a

21   claimant's testimony based on a resistance to treatment, where there was no evidence that the

22   resistance was based on her impairments rather than her personal preference).  Based on the

23   foregoing, Plaintiff's failure to comply with treatment recommendations was a clear and

24   convincing reason, supported by substantial evidence, to discount her symptom claims as to any

25   upper extremity or manipulative limitations.

26        Third, the ALJ found Plaintiff has "applied for disability many times as an adult and has

27   no consistent record of work.  In fact, [Plaintiff's] only reported earnings in the last 15 years were

28   self-employment earnings from babysitting for less than a year in 2015."  (AR 32).  The Court

1   may decline to consider this issue as it was not raised with specificity in Plaintiff's opening brief.

2   *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).

3   Regardless, evidence of a poor work history that suggests a claimant is not motivated to work is a

4   permissible reason to discredit a claimant's testimony that he is unable to work.  *Thomas*, 278

5   F.3d at 959; 20 C.F.R. §§ 404.1529, 416.929 (prior work record can be considered in assessing

6   credibility).  This is a clear, convincing, and unchallenged reasons for the ALJ to discount

7   Plaintiff's symptom claims.

8       Fourth, the ALJ considered Plaintiff's activity level in assessing the RFC.  (AR 30).  A

9   claimant need not be utterly incapacitated in order to be eligible for benefits.  *Fair v. Bowen,* 885

10  F.2d 597, 603 (9th Cir. 1989); *see also Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007) ("the

11  mere fact that a plaintiff has carried on certain activities . . . does not in any way detract from her

12  credibility as to her overall disability.").  However, even where daily activities "suggest some

13  difficulty functioning, they may be grounds for discrediting the [Plaintiff's] testimony to the

14  extent that they contradict claims of a totally debilitating impairment."  *Molina v. Astrue*, 674

15  F.3d 1104, 1112-13 (9th Cir. 2012) (internal citations omitted), *superseded on other grounds by*

16  20 C.F.R. § 416.920(a).  Here, the ALJ acknowledged that Plaintiff is receiving home support,

17  authorized for a maximum of 15 hours per week and 60 hours per month, including assistance

18  with personal care tasks, preparing meals, and shopping.  (AR 30, 46, 363).  However, the ALJ

19  further noted that Plaintiff reported she is not entirely dependent on the home support provider, as

20  she is able to help with shopping on a weekly basis.  (AR 31, 403).  Plaintiff contends this is a

21  "substantial overestimation" of Plaintiff's level of functioning, and in support of this argument

22  she cites her own reports that she cannot count money or drive to appointments, and she needs

23  help showering, dressing, doing laundry, making meals, and remembering appointments.  (Doc.

24  16 at 19-20, 48, 60, 401-03).  The Court agrees that a single report of "helping" with shopping

25  once a week with her caregiver, would not rise to the level of substantial evidence to discount

26  Plaintiff's symptom claims as inconsistent with daily activities.

27      However, in support of this finding the ALJ also cites Plaintiff's testimony that she is

28  currently enrolled in an educational program that requires her to study four hours per day on a

1    tablet to earn her GED.  (AR 31, 48-49 (testifying that she has worked on a tablet four hours a

2    day for the past two years and has completed 8 out of 12 classes needed to graduate)).  In

3    addition, elsewhere in the decision, the ALJ notes she enjoys arts and crafts.  (AR 26, 595).  Thus,

4    regardless of evidence that could be considered more favorable to Plaintiff, it was reasonable for

5    the ALJ to find Plaintiff's documented activities, including using a tablet for four hours a day to

6    complete online school, and doing arts and crafts, was inconsistent with her allegations of entirely

7    debilitating functional limitations specifically as to any claimed manipulative limitations.

8    *Molina*, 674 F.3d at 1113 (Plaintiff's activities may be grounds for discrediting Plaintiff's

9    testimony to the extent that they contradict claims of a totally debilitating impairment); *Burch v*,

10   400 F.3d at 679 ("Where the evidence is susceptible to more than one rational interpretation, it is

11   the ALJ's conclusion that must be upheld.").

12        The Court concludes that the ALJ provided clear and convincing reasons, supported by

13   substantial evidence, for rejecting Plaintiff's symptom claims as to any upper extremity and/or

14   manipulative limitations.

15                                          **VIII.   CONCLUSION**

16        A reviewing court should not substitute its assessment of the evidence for the ALJ's.

17   *Tackett*, 180 F.3d at 1098.  To the contrary, a reviewing court must defer to an ALJ's assessment

18   as long as it is supported by substantial evidence.  42 U.S.C. § 405(g).  As discussed in detail

19   above, the ALJ properly considered Plaintiff's symptom claims regarding any claimed

20   manipulative limitations.  After review, the Court finds the ALJ's decision is supported by

21   substantial evidence and free of harmful legal error.

22        /////

23        /////

24        Accordingly, it is **ORDERED**:

25        1.   Plaintiff's Motion for Summary Judgment (Doc. No. 16) is DENIED.

26        2.   Defendant's Cross-Motion for Summary Judgment (Doc. No. 20) is GRANTED and

27             the decision of the Commissioner of Social Security is AFFIRMED for the reasons set

28             forth above.

                                                    12

1       3.  The Clerk is directed to enter judgment in favor of the Commissioner of Social

2          Security, terminate any pending motions/deadlines, and close this case.

Dated:   July 28, 2024

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE